IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-00608-MSK-CBS

WILDEARTH GUARDIANS,

    Plaintiff,

v.

NATIONAL PARK SERVICE,

    Defendant.

---

**OPINION AND ORDER DENYING MOTION TO INTERVENE**

---

**THIS MATTER** comes before the Court pursuant to Interested Parties Safari Club International and Safari Club International Foundation's (collectively "Safari Club") Motion to Intervene **(# 13)**, the Plaintiff's response **(# 17)**, and Safari Club's reply **(# 23)**.

This case involves a challenge to an administrative decision by Defendant National Park Service ("NPS"). The issue involves steps taken by the NPS to address elk overpopulation in Rocky Mountain National Park. After considering various options to address the issue – one of which involved the introduction of a sterile population of gray wolves into the Park to act as predators, and another, which involved a "culling" program enlisting qualified volunteers to kill specified numbers of elk under the supervision of Park employees – the NPS selected the culling option. The Plaintiff contends that the NPS should also have considered an additional option – namely, introduction a population of <u>fertile</u> gray wolves.

The Plaintiff's Amended Complaint claims **(# 24)** that the selection of the culling option violates: (i) the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332, in that the NPS did not consider a reasonable range of alternatives to the culling plan; (ii) the Organic Act, 16 U.S.C. § 1a-1, which requires the NPS to prohibit any activity in national parks that would derogate the NPS' duties of conservation and unimpairment; and (iii) the Rocky Mountain National Park Enabling Act, 16 U.S.C. § 198c, which prohibits hunting within the park.

Safari Club filed the instant Motion to Intervene **(# 14)**, claiming that they have two interests that will allegedly be impaired as a result of any decision in this case: (i) their members are hunters who engage in activities near the boundaries of Rocky Mountain National Park, and introduction of wolf populations into the Park, as urged by the Plaintiff, could result in the wolves roaming outside Park boundaries, affecting the amount of huntable animals in regions where Safari Club members recreate; and (ii) several members of the Interested Parties are qualified to participate as hunters in the culling plan, and overturning the plan would impair their ability to participate.

Fed. R. Civ. P. 24(a)(2) permits a party to intervene as a matter of right if that party has "an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." However, as extensively discussed in *San Juan County v. U.S.*, 503 F.3d 1163, 1190-92 (10th Cir. 2007) (plurality), there has been a lack of clear guidance from the Supreme Court as to how key concepts in the Rule, such as "interest" and "impair," should be interpreted, and even the 10th Circuit has deprecated its own prior rulings on the issue. *Id.* at 1192-93, *criticizing Utah Assn. of*

2

*Counties v. Clinton*, 255 F.3d 1246, 1251 (10th Cir. 2001). The central concern in deciding whether intervention is proper is the practical effect that the litigation will have on the applicant. *Id.* at 1193. Determining whether intervention is appropriate is a fluid, fact-based examination which requires the Court to engage in a "balancing and blending of the individual components" of the Rule. *Id.* at 1195. Thus, a lesser showing of impairment may nevertheless suffice if the applicant's interest is particularly strong, and so on. *Id.* Ultimately, the court must determine, as a practical matter, the strength of the applicant's interest and the potential risk of injury to that interest.[1] *Id.* at 1199.

With the guidance of *San Juan County* in mind, the Court turns to the particular interests Safari Club alleges could be impaired by the outcome of this case. As to Safari Club's members' interest in the quality of hunting opportunities in lands adjacent to Rocky Mountain National Park, the Court finds that such an interest bears a moderate connection to the issues in this case. Although the NPS decision at issue here apparently applies only to actions taken against elk inside Rocky Mountain National Park, Safari Club is correct that both elk and predators move freely across park boundaries and onto lands where Safari Club members hunt. In such a circumstance, Safari Club may not necessarily have an interest in matters of internal Park management, but to the extent that such management decisions could have consequences that would be felt on hunting lands adjacent to the Park as well, Safari Club has demonstrated that it has some degree of interest in this case.

---

[1] A number of 10th Circuit judges concurred in the result in *San Juan County*, but disagreed with the plurality's critique of the then-existing analysis of the "interest" and "impair" factors. Although this Court applies the more flexible analysis of the *San Juan County* plurality, its result would have been the same under either analytical approach.

However, the Court finds that Safari Club has not shown a significant risk that this interest will be impaired by the outcome of this litigation. Safari Club members fear that a proposal other than the culling scheme contemplated by the NPS may be adopted and, if so, their interests in hunting on adjacent lands may be adversely impacted. Such concern does not necessarily arise simply because the NPS's decision is reversed. Indeed, the expression of this concern as a ground for intervention reflects a fundamental misunderstanding of a court's role in agency decision review.

In an APA case, the Court reviews only the process by which a decision is made, it does not determine the merits of that decision. *See e.g. Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971). A decision in the Plaintiff's favor would only result in the Court "set[ting] aside" the NPS's decision, 5 U.S.C. § 706(2)(A), and remanding the issue back to the NPS for additional consideration. What the outcome of the remand would be is unknown.[2]

In reality, the hunting interests of members of the Safari Club will only be impaired if the Plaintiff succeeds in this action and ultimately convinces the NPS to adopt the heretofore unconsidered alternative[3] of introducing fertile wolves. Such a risk of impairment is too remote

---

[2] Any number of outcomes are possible: upon reconsideration, the NPS might reach the same decision and re-institute the culling program, leaving the Safari Club's members' interests unaffected. Or, the NPS might select one of the non-wolf alternatives it previously rejected – alternatives that Safari Club does not appear to contend would impair its members' interests. Indeed, it is not even clear that Safari Club necessarily contends that the sterile-wolf alternative considered by NPS would significantly impair its members' hunting interests.

[3] In this sense, it is important to recognize that the Plaintiff has raised a variety of arguments as to how the NPS's decision violated the controlling statutes, but only one of these arguments would necessarily require NPS to consider an elk management alternative involving fertile wolves. If the Plaintiff cannot show that failure to consider a fertile wolf alternative violated NEPA, even success on some other theory and remand to NPS for further decision making would not raise the specter of a fertile wolf alternative being adopted.

4

to warrant intervention at this point, particularly where Safari Club will have the opportunity to fully air its concerns in any new NPS decisionmaking.

Safari Club argues that the mere fact that additional agency decisionmaking must occur before their interests might be impaired is insufficient reason to deny intervention, citing *Clinton*. 255 F.3d at 1253-54. This Court finds *Clinton* distinguishable for several reasons. First, as discussed above, it appears that the 10th Circuit decision in *San Juan County* largely abandons the analytical framework of *Clinton*, leaving the persuasive value of that case in significant doubt.

Second, *Clinton* presented a significantly different factual and legal scenario. There, the proposed intervenors sought to participate to defend a presidential order designating certain lands as a national monument, against challengers who questioned both the president's constitutional power to designate a monument in that manner and whether the designation complied with NEPA and other statutes. The 10th Circuit found that the environmental organizations seeking to intervene should have been granted relief under Rule 24(a)(2). In doing so, it rejected an argument that the organizations' ability to participate in any land-use decisionmaking that would occur if the national monument designation was voided was a suitable alternative to allowing intervention. *Id.* at 1254. It noted that "at most," any revised land use plan "would not provide the level of protection to the intervenors' interest that the current plan offers," *id.,* apparently because voiding of the designation was sought in order to enable mining on the land. *Id.* at 1253-54. By contrast, one cannot say here that an order directing the NPS to reconsider its elk management strategy would necessarily result in an outcome that offers less protection to Safari Club than the current plan does. For the reasons

stated above, a remand here might result in the NPS selecting the same culling plan, or may result in another alternative that does not materially impair Safari Club members' hunting interests.[4] In addition, it appears that the decision in *Clinton* was based, at least in part, on the fact that the challengers were attacking not only the procedural steps taken to designate the monument, but the presidential power to do so. The 10th Circuit found that "the *stare decisis* effect of the district court's judgment" would itself constitute an impairment to the organizations' interest in using national monument designations to obtain environmental protection for other lands. *Id.* at 1254. The curious legal issues in *Clinton* further distinguish the outcome of that case from the simple procedural challenge leveled here.

Accordingly, the Court finds that Safari Club members' interest in preserving their access to enjoyable and productive hunting on lands adjacent to Rocky Mountain National Park is insufficient to warrant intervention as of right under Rule 24(a)(2).

The second argument made by Safari Club is that interest that some of its members have in participating as volunteers in the planned culling program might be lost. Safari Club has submitted affidavits from several members attesting to the fact that they have reviewed the qualifications that will be required of culling volunteers, and that they possess the requisite qualifications. Notably, none of the members represent that they have already been selected to participate as volunteers, nor do they identify any designated selection process that will be used by the NPS that indicates that the members will be or are likely to be selected as volunteers.

---

[4]Thus, the Court would reach the same result here even under the more rigid analysis of "interest" and "impair" in *Clinton*. *See generally San Juan County*, 503 F.3d at 1208 & n.2 (Kelly, J. concurring) (discussing and distinguishing *Clinton* facts and analysis).

In this respect, the Court cannot find that Safari Club, on behalf of its members, has a significant interest in the outcome of the litigation. In the absence of having obtained actual authorization to participate in the cull, or selection criteria that render it likely that one or more Safari Club members will be selected to participate, the members have nothing more than an abstract hope or desire that they will be selected. *San Juan County* makes it clear that an interest justifying intervention need not be one that is "legally protectible," 503 F.3d at 1193, but it is clear that, as a practical matter, Safari Club members' interests in being selected to participate in the cull are so speculative, temporally remote, and contingent that the interests themselves are insufficient to warrant intervention. Accordingly, the Court denies Safari Club's motion to intervene as of right under Rule 24(a)(2).

Permissive intervention under Rule 24(b) requires Safari Club to show that it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). Whether to grant permissive intervention is a matter that is addressed to this Court's discretion, to be exercised mindful of matters such as the sufficiency of existing representation, any delay or prejudice that would result for intervention, concerns of efficiency, and so on. *See generally City of Stillwell v. Ozarks Rural Elec. Co-op*, 79 F.3d 1038, 1043 (10th Cir. 1996); *Arney v. Finney*, 967 F.2d 418, 421 (10th Cir. 1992).

In the first instance, the Court has some doubt that Safari Club possesses any "claim or defense" that bears on the case. Safari Club's motion does not identify any claim or defense that they possess or plan to assert. The motion alludes to the Safari Club's "defenses for the NPS's actions," but does not state what these defenses are. It is difficult to conceive how Safari Club could have defenses to the Plaintiff's claims against the NPS under NEPA, the Organic Act, or

7

the Park Enabling Act, as Safari Club was, admittedly, not involved in the NPS's decision making. Indeed, the Proposed Answer In Intervention **(# 13-3)** attached to the Interested Parties' motion does nothing more than deny the allegations in the Complaint and raise generic affirmative defenses; Safari Club does not identify any defense that is particular to them, or discrete from anything that the NPS can raise directly.

In any event, the Court would nevertheless exercise its discretion to decline permissive intervention to Safari Club out of concerns of efficiency and adequacy of representation. Once again, the Court emphasizes that the nature of its review in an APA case is extremely limited. The Court will not be opining as to the relative merits of the culling plan vs. predator-based plans, or whether fertile wolves are a preferable alternative to sterile wolves, or any other question going to the merits of the NPS's decision. The Court recognizes that advocacy groups can have firm, passionate convictions that one approach is superior to another, or that a particular course of action would have devastating consequences, but such convictions are utterly misplaced in an action such as this, which examines only whether the process by which the NPS reached its decision was one that complied with the law. It does not appear that Safari Club has any particular interest in defending this process that is not adequately represented by the NPS itself.

Accordingly, Safari Club's Motion to Intervene **(# 13)** is **DENIED**. In the alternative, Safari Club asks for leave to file an *amicus curiae* brief. No party has objected to this request, and the Court sees little prejudice to the parties in allowing Safari Club to submit an amicus brief. To the extent that an *amicus* brief raises unique and relevant arguments, the Court's decision will be better informed; to the extent an *amicus* brief duplicates substantive arguments

by the parties themselves, or raises issues that are not germane to the issues before the Court, no additional substantive response will be required from the parties. Accordingly, Safari Club is granted leave to submit an *amicus* brief, to be submitted on or before **October 15, 2008**.

Dated this 30th day of June, 2008

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge